CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
JUN 23 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **JUDY WAIN,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:05cv00043 |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| **TRAMMEL HOTEL** | ) |
| **INVESTMENTS, L.L.C.,** | ) By: Glen M. Williams |
| **AND MACK TRAMMEL,** | ) SENIOR UNITED STATES DISTRICT JUDGE |
| | ) |
| Defendants. | ) |

This matter is before the court on the defendants', Trammel Hotel Investments, L.L.C., ("THI"), and Mack Trammel, ("Trammel"), motion for summary judgment, (Docket Item No. 35). The plaintiff, Judy Wain, ("Wain"), filed this action seeking damages from THI and Trammel for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, negligent and intentional infliction of emotional distress and battery. Jurisdiction of this court is conferred by 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1367. An oral argument on the motion for summary judgment was previously held before the magistrate judge on March 20, 2006, after which, the magistrate judge issued a Report and Recommendation, (Docket Item No. 58), whereby the magistrate judge recommended that this court overrule THI's and Trammel's motion for summary judgment on Wain's sexual harassment/hostile work environment claim, racial discrimination claim and battery claim and sustain THI's and Trammel's motion for summary judgment on Wain's

-1-

intentional infliction of emotional distress claim. This court adopts the magistrate judge's report in part and overrules the report in part. THI's and Trammel's motion for summary judgment is overruled with regard to Wain's sexual harassment/hostile work environment claim and battery claim. THI's and Trammel's motion for summary judgment, with regard to Wain's intentional infliction of emotional distress claim, is sustained. As will be explained below, THI's and Trammel's motion for summary judgment, with regard to Wain's racial discrimination claim, is sustained.

## I. Facts

Wain was employed by THI on or about March 12, 2003, as a server and then later as a night hostess in THI's restaurant, Chops, located in Bristol, Virginia. Trammel is the sole beneficiary of a trust that holds the controlling interest in THI. Eventually, Wain became a morning shift leader, whereby she directed work on the restaurant floor, scheduled employee shifts and covered for employees who did not show up for a scheduled shift.

During her employment, Wain, a white woman, became socially involved with Eric Robinson, ("Robinson"), a black man, who also was employed by THI. Wain testifed, during her deposition, that on October 17, 2003, Desiree Keithan, ("Keithan"), who was the general manager of THI, summoned Wain to her office and instructed Wain to stop socializing with Robinson because she and Trammel did not approve of supervisor-supervisee socializing or interracial socializing. Keithan further informed Wain that if her relationship with Robinson did not cease, then she would be demoted or fired.

Katherine Birk, ("Birk"), who was THI's food and beverage director, hired and fired both Wain and Robinson. In Birk's affidavit, she swore that Wain's termination was due to absenteeism. Specifically, Birk stated that on November 9, 2003, Robinson failed to show up for his morning shift. When a THI employee called Robinson's residence to inquire about his absence, Wain answered the phone and explained that Robinson was not there. According to Wain, the employee responded that THI needed Robinson to come in to work, but the employee never asked Wain to come into work. However, Wain knew that Robinson was scheduled to work the morning shift because she believed that he had the shift covered. Neither Robinson nor his replacement had shown up for work that day. Wain, as a morning shift leader, was required to either cover Robinson's missed shift or find another available THI employee to cover Robinson's shift once she became aware of his absence. According to Birk, Wain failed to do either and was terminated from THI as a result. Both Birk and Keithan have proffered evidence that failure to work a scheduled shift or to arrange for someone else to work the shift was grounds for termination under THI's policies. Further, both Birk and Keithan have proffered evidence that a shift leader's failure to cover a shift for an absent employee is grounds for termination under THI's policies.

Wain submitted the deposition of Patrick Early, ("Early"). Early swore that on November 9, 2003, he was working at Chops. He stated that it was a busy morning, and they were shorthanded. Early said that Sarah Conner was called to fill in, and he believed that Birk called Sarah Conner.

Robinson, in his deposition, testified that he arranged for someone to cover his

shift on the morning of November 9, 2003, but he does not remember the name of the person with whom he made this arrangement. THI's policy is that if an employee wants to alter their schedule, THI requires the employee to obtain a replacement worker. The employee must ensure that the replacement covers the shift. Failure to work a scheduled shift, or to arrange and ensure that a replacement covers the shift, is grounds for termination. Also, if an employee on a given shift is absent, his or her shift leader is responsible for finding someone to cover the shift, or for covering the shift personally. Failure to do so is grounds for termination. Both Robinson and Wain stated that they were aware of THI's employee policies.

## II. Analysis

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 850 (4th Cir.

-4-

1990); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364-65 (4th Cir. 1985); *Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir. 1980). The plaintiff is entitled to have the credibility of all her evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 248.

## A. Racial Discrimination

There are two ways to establish racial discrimination. It may be established by direct evidence or under the *McDonnell Douglas* burden shifting scheme. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). To constitute direct evidence, evidence must reflect "discriminatory . . . amius on the part of a person involved in the decision making process." *Armbruster v. Unisys Corp.*, 32 F.3d 786, 788 (3rd Cir. 1994). *See also Nitschke v. McDonnell Douglas Corp.*, 68 F.3d 249, 253 (8th Cir. 1995) (statement by company president not involved in decision to terminate plaintiff not direct evidence); *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir. 1995) (statement by other in management not connected with termination decision not direct evidence). Wain does not have direct evidence of discrimination because it was

Case 1:05-cv-00043-JPJ-PMS   Document 100   Filed 06/23/06   Page 5 of 10   Pageid#: 536

Keithan, not Birk who allegedly made the discriminatory remark. It was Birk, not Keithan, who fired Wain, and Birk had no knowledge of Keithan's remark, therefore; Wain must meet the criteria of the *McDonnell Douglas* burden shifting scheme.

In order to establish a prima facie case for racial discrimination under the *McDonnell Douglas* burden shifting scheme Wain must prove that (1) she belongs to a racial minority; (2) she was qualified for the job[1]; and (3) she was fired due her minority status. *See McDonnell Douglas Corp. v. Green,* 411 U.S. at 792, 802 (1973). Once the prima facie case is established, a presumption of discrimination is created and imputed to the employer, which the employer may rebut the presumption by producing evidence that the adverse employment actions were taken for a legitimate nondiscriminatory reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993) (quoting *Texas Dept. of Comty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)). Although the burden is shifted to the defendant, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253.

Wain has made out a prima facie case of racial discrimination. She was a white female who was in an interracial relationship with a black male. *See Fiedler v. Marumsco Christian Sch.,* 631 F.2d 1144 (4th Cir. 1980) (taking adverse action against a white person because of association with blacks violates the civil rights statutes). Wain was qualified for her job, and she was fired. The burden, therefore,

---

[1] THI argues that Wain was not qualified for her job because Wain violated the rules in the employee handbook by not covering Robinson's shift. However, Wain was qualified for her job until November 9, 2003, the day she violated THI rules.

-6-

shifts to THI to prove by a preponderance of the evidence that the reason that Wain was fired was for a non-discriminatory purpose.

Birk testified that absenteeism was the reason for Wain's termination. Specifically, Birk said that on November 9, 2003, Robinson failed to show up for his morning shift. When a THI employee called Robinson's residence to inquire about Robinson's absence, Wain answered the phone and explained that Robinson was not there. Wain, as morning shift leader, was required to have Robinson's job covered or cover it herself. Birk stated that Wain failed to do either and that was the reason her employment was terminated.

THI has proffered evidence of a valid nondiscriminatory reason for firing Wain, which is not merely pretextual. Although Wain testified that an inappropriate remark was made by Keithan regarding Wain's relationship with Robinson prior to Wain's termination, even if true, this remark cannot be imputed to Birk, because Birk actually fired Wain and testified that she had no prior knowledge of Keithan's inappropriate remark. *See O'Connor v.* 56 F.3d at 549. There is simply no evidence that Keithan was involved, in any way, in the decision to fire Wain. Furthermore, in affidavits by both Keithan and Birk they swore to and submitted the names of 49 employees who were black and white. All 49 of these employees had been fired. The majority of the 49 employees were white. They also submitted the names and testified about 13 additional employees. These 13 employees were involved in, or were the offspring of, some form of an interracial relationship. No adverse employment action had been taken against these employees, and some of these employees had prospered at THI. Accordingly, Wain has failed to prove that Birk

possessed a racially discriminatory motive when she fired Wain.

Wain submitted an affidavit[2] that contradicted her deposition testimony. During her deposition, Wain stated that she was unaware of a situation like Robinson's and her own where a THI employee or shift leader had not shown up for a scheduled shift without first calling in to inform management that he/she would be missing the shift. Apparently, during Wain's tenure at THI, it was an unprecedented situation for an employee to just not show up for a scheduled shift without first calling in. This was the reason that she and Robinson were fired. Wain, at her deposition, knew of no one who was fired for this reason. However, in her subsequent affidavit, Wain submitted the names of three THI employees who were, according to Wain, not fired for missing a single shift of work, but it is unclear if these three employees called in and informed management of their impending absence. However, it is well-settled in this circuit that "a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *See Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999)(citing *Rohrbough v. Wyeth Lab, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990)). Even if Wain's affidavit is accepted as true, the extenuating circumstances surrounding these three employees who were not fired cannot be ascertained and, therefore, the affidavit does not demonstrate how their situations were similar to Wain's and Robinson's nor does the affidavit demonstrate how Robinson and Wain were treated differently.

---

[2] It also is noted that Wain's affidavit was submitted beyond the discovery deadline of February 14, 2006, and it covers matters in contradiction to matters previously testified to in her deposition.

-8-

Case 1:05-cv-00043-JPJ-PMS Document 100 Filed 06/23/06 Page 8 of 10 Pageid#: 539

Robinson may have indeed arranged for some individual to work for him, but it is clear from the evidence that, if so, the individual did not show up and cover Robinson's shift. As a result, an employee at THI called Robinson's residence to inquire about his absence, whereupon Wain answered the phone. She explained that she did not know Robinson's whereabouts. This is the point in time that Wain definitively knew of Robinson's absence from work, and she was obligated, under the terms of her employment, to cover Robinson's shift or have another employee cover the shift. It did not matter that the employee did not ask Wain specifically to come in, because it was Wain's responsibility as shift leader to cover for employees who missed their shift. Wain disregarded her responsibility, and by doing so, THI had to call Connor to come and cover Robinson's missed shift. Thus, Wain did not cover Robinson's missed shift after she became aware of his absence and thereby violated THI's policy. Therefore, this court finds that no genuine issue of material fact exists, and summary judgment is awarded in favor of THI and Trammel with regard to Wain's racial discrimination claim.

Wain moved the court for a bifurcated trial. There being no objection by THI or Trammel, the court bifurcates the issue of punitive damages. Therefore, if a verdict is rendered for Wain on her sexual harassment/hostile work environment claim and/or battery claim, the same jury will hear evidence and render a verdict on the punitive damages claim.

An appropriate order will be entered.

DATED: This 23rd day of June, 2006.

Case 1:05-cv-00043-JPJ-PMS Document 100 Filed 06/23/06 Page 9 of 10 Pageid#: 540

_/s/ James P. Jones_
SENIOR UNITED STATES DISTRICT JUDGE